**In The Matter of TOM LeDUC ENTERPRISES, INC., Debtor.**

**TOM LeDUC ENTERPRISES, INC., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 83–1213–CV–W–4.**

United States District Court,
W.D. Missouri, W.D.

Sept. 10, 1984.

Donald B. Steele, Morrison, Hecker, Curtis, Kuder & Panish, Kansas City, Mo., for Tom LeDuc Enterprises, Inc.

Mary Schneider, Asst. U.S. Atty., Robert G. Ulrich, Kansas City, Mo., for U.S. Internal Revenue Service.

## ORDER

RUSSELL G. CLARK, Chief Judge.

Plaintiff/debtor seeks review of an order entered on September 21, 1983, by the United States Bankruptcy Court for the Western District of Missouri, Western Division. Plaintiff seeks to have the August 26, 1983, order granting debtor's amended application for authority to make disbursement to priority creditors reinstated. Plaintiff's request for reinstatement of the August 26, 1983, order will be granted.

## BACKGROUND

On April 2, 1980, LeDuc Enterprises, Inc., filed a petition with the United States Bankruptcy Court for the Western District of Missouri under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101 et seq., 1129. After all assets of the debtor had been liquidated, and all disputed claims had been determined, there was a balance of $15,460.00. Although there were no class 1 or class 2 claims, there were $62,443.64 in class 3 tax claims alleged by a variety of taxing authorities. The IRS's claim against the debtor was for $51,473.04 in withholding taxes. Of those $34,517.70 represented the trust fund portion of the withholding tax liability. Of the balance of assets which remained to be distributed ($15,460.00), the IRS was limited to a prorated recovery of $12,743.86. The debtor filed an amended application for authority to make disbursements to priority creditors on August 25, 1983. The bankruptcy court entered its order granting debtor's amended application on August 26, 1983. The amended application provided that the payment of $12,743.86 was to be applied to the trust fund portion of the corporation's outstanding withholding tax liability. In communications between the debtor and the IRS between July 1, 1983, and August 24, 1983, an agreement had been reached between the IRS and the debtor concerning the corporation's trust fund liability. The IRS agreed to apply its pro rata share of the balance of the assets of the corporation ($12,743.86) to the trust fund portion of the corporation's liability, if the debtor would pay the balance which was owed to the trust fund ($21,774.70). In final negotiations on August 24, 1983, Wanda Gilbert, a collection agent of the IRS, informed the

debtor that in order for the corporation's funds to be applied to the trust fund portion of the tax liability there must be a court order authorizing the corporation to do so. Therefore, the debtor's attorneys filed the debtor's amended application for authority to make disbursement to priority creditors which the court granted on August 26, 1983. On that date in a meeting between the IRS and the debtor, a personal check for $21,772.84 along with a check, as authorized by court order, from the corporation for $12,743.86 and a letter outlining the details of the agreement between the IRS and the debtor were presented to the IRS. After cashing both the personal check and the check from LeDuc Enterprises, the IRS requested that the portion of the order of August 26, 1983, which required the IRS to apply the payment from the corporation to the trust fund portion be deleted. Bankruptcy court granted the IRS's request on September 21, 1983.

## DISCUSSION

■ If voluntary tax payments are made in the absence of any agreement then the IRS can apply the payments received to any lien or any amount owed. *In Re Frost,* 19 B.R. 804, 808 (Bankr.D.Kan.1982). However, when the taxpayer specifically directs the IRS to apply the payments to individual liens or amounts owed, then payments should apply, and the directives must be followed by the IRS. *Id.* at 808. When payments are involuntary, the IRS and not the taxpayer has the right to decide how to apply those payments. *In Re Obie Elie Wrecking Company, Inc.,* 35 B.R. 114 (Bankr.N.D.Ohio 1983). Thus, the question before this Court is whether or not the payments made as a result of the August 26, 1983, disbursement order are voluntary or involuntary.

■ In order to determine whether or not the payments to the IRS are voluntary or involuntary, it must be determined whether or not the payment "was received through court or administrative action which resulted in actual seizure of property or money such as in a levy. This inquiry requires an examination of the specific facts of each case not just an examination of whether or not the payment was made while the payee was in bankruptcy." *In Re Avildsen Tools and Machines,* 30 B.R. 911, 917 (Bankr.N.D.Ill.1983). The facts in *Avildsen* are similar to the ones before this Court today. In that situation the IRS did not have to take any specific court action in order to collect the monies which it was owed, unlike the situation in *Odell v. United States,* 326 F.2d 451 (10th Cir.1964), where the IRS was forced to seize and offer for sale certain real property owned by the debtor. In *O'Dell,* court action and seizure was required and the court ruled that the payment was involuntary. In *Avildsen,* since there was no seizure of the property or money such as in a levy, the debtor's payment to the IRS was "voluntary in every sence of the word and thus should have been applied as the debtor directed." *Avildsen* at 917.

■ In addition the *Avildsen* court pointed out that unlike the situation in *In Re Pan American Educational Institute,* No. 81–03917–3–11 (Bankr.W.D.Mo. July 28, 1983), where no agreement existed, an agreement existed between IRS and the debtor to apply the funds in the manner directed. The agreement in *Avildsen* was nothing more than a restrictively endorsed check to the IRS directing that the funds be applied in a specific manner. The Court in *Avildsen* held that when the IRS accepted the debtor's restrictively endorsed check, gave receipts for the check and applied the funds as directed by the debtor, then the IRS had accepted the debtor's offer and engaged in conduct in which the debtor may reasonably have relied and therefore "the IRS should not be allowed to reject the debtor's offer and reapply the funds as it so desires ... after acceptance." *Avildsen* at 917. The agreement between the IRS and the plaintiff is clear and well documented, nor was the IRS required to seize property or take any court action. Therefore, for the above-stated reasons, it is hereby

ORDERED that the bankruptcy court's order granting debtor's amended application for authority to make disbursement to priority creditors entered on August 26, 1983 be reinstated.